IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------

BROAD STREET SURGICAL CENTER,      :      HON. JEROME B. SIMANDLE
LLC,                               :
                                   :      Civil No. 11-2775 (JBS/JS)
              Plaintiff,           :
                                   :
         v.                        :           **OPINION**
                                   :
UNITEDHEALTH GROUP, INC., et       :
al.,                               :
                                   :
              Defendants.          :

------------------------------

APPEARANCES:

Andrew Joseph Karcich, Esq.
Joanne Eskin Sutkin, Esq.
LYNCH, KARCICH & YELLIN
1020 Laurel Oak Road
Suite 100
Voorhees, NJ 08043
     Attorneys for Plaintiff Broad Street Surgical Center, LLC

Scott A. Resnik, Esq.
KATTEN, MUCHIN & ROSENMAN, LLP
575 Madison Avenue
14th Floor
New York, NY 10022
     Attorney for Defendants UnitedHealth Group, Inc. and United
Healthcare Services, Inc.


**SIMANDLE,** Chief Judge:

# I.  INTRODUCTION

     This matter is before the Court on Defendants UnitedHealth
Group, Inc. and United Healthcare Services, Inc.'s ("Defendants"
or "United") motion to dismiss the first amended complaint
[Docket Item 4] and Plaintiff Broad Street Surgical Center, LLC's
("Plaintiff") motion for leave to file a second amended complaint

[Docket Item 18].  The Plaintiff is a non-participating provider of medical services who provided services to patients who were covered under various insurance policies or plans administered by the Defendants.  The instant action arises out of United's denial to reimburse claims submitted by the Plaintiff for services rendered to United's insureds.

For the reasons discussed herein, the Court will grant in part and deny in part Plaintiff's motion to file a second amended complaint.  The Court will dismiss Defendant's motion to dismiss as moot.

## II.  BACKGROUND

Plaintiff is an ambulatory surgical facility that provides services associated with outpatient surgery to patients, including Patients 1-50, and is located in New Jersey.  (Pl.'s Ex. A to the Affidavit of JoAnne Eskin Sutkin in support of motion for leave to amend complaint and file opposition to motion to dismiss, hereinafter "Proposed Second Amended Complaint") (Sec. Am. Comp. ¶ 4).  United is an insurer providing insurance coverage to insureds and beneficiaries within New Jersey, including Patients 1-50.  (Prop. Sec. Am. Comp. ¶ 6.)  The Plaintiff was a non-participating provider of Services in that it did not have a contract with Defendants to accept agreed rates for the Services provided to the Patients with agreements or who were otherwise beneficiaries, with the Defendants.  The Services

2

provided to Patients 1-50 were out of network services.  (Prop. Sec. Am. Comp. ¶ 14.)

Plaintiff provided surgical facility services associated with outpatient surgery to Patients 1-50, who were at the time of the services, insured by Defendants under various United insurance agreements or agreements to which United was or is the Third Party Administrator.  (Prop. Sec. Am. Comp. ¶ 10.)

Prior to rendering services to Patients 1-50, Plaintiff's representative telephoned the Defendants and spoke with a Defendants' agent to confirm out of network coverage for the requested services.  During each telephone call, the Plaintiff's representative stated where she was calling, provided United with the tax i.d. number of the Plaintiff, identified the patient by name, date of birth and policy number, as well as the procedure being performed.  In each telephone call, Plaintiff's representative and employee was informed by United that there was coverage for Plaintiff's facility fees and for the procedures involved.  (Prop. Sec. Am. Comp. ¶¶ 15-26.)

Plaintiff received assignments of benefits ("AOBs") from Patients 1-50, each of which had out of network benefits for ambulatory surgery under their respective insurance agreements or plans with Defendants, some of which are or may be ERISA plans. (Prop. Sec. Am. Comp. ¶ 30.)

From the Spring of 2009 to approximately September 2009, the

3

Defendant paid claims submitted by the Plaintiff for services rendered to patients insured by United. (Prop. Sec. Am. Comp. ¶ 33.)

On and after September 2009, Plaintiff made claims for payments for services provided by Plaintiff to Patients 1-50 as a service provider or alternately as an assignee of the patients. (Prop. Sec. Am. Comp. ¶ 39.)  As of September 2009 to the present, Defendants have denied insurance coverage and refuse to pay Plaintiff for services provided to Patients 1-50.  (Prop. Sec. Am. Comp. ¶ 40.)   According to the explanation of benefits, the Defendants denied all of Plaintiff's claims on and after September 2009 for the following reason: "We cannot pay this claim because we are unable to verify state licensure of a facility or criteria to support the provider billing type.  Proof of facility licensure or hospital affiliation is required." (Prop. Sec. Am. Comp. ¶ 37.)

Pursuant to various letters, Defendants base their refusal to pay for the Services provided by Plaintiff to Patients 1-50 because the Plaintiff is not licensed with the New Jersey Department of Health as an ambulatory care facility and therefore no benefits are available for expenses incurred at the facility and that the wrong form was utilized for submission of the claims.  (Prop. Sec. Am. Comp. ¶ 41.)

From March 2009 until the present, the Plaintiff submitted

4

to the Defendant 59 claims for payment relating to 15 patients.
There are 14 employee benefit plans that govern the payment of
Plaintiff's claims.[1]  (Defs.' Ex. 2, Affidavit of Stacy A.
Chalupsky "Chalupsky Aff." at ¶ 4.)  Of these 14 plans, 13 are
governed by the Employee Retirement Income Security Program, 29
U.S.C. §§ 1001, et seq. (hereinafter "ERISA.")  The remaining
plan is not an ERISA plan and governs 5 of Plaintiff's claims.
(Chalupsky Aff. at ¶ 5.)

In addition, in or about September of 2009, Plaintiff
entered into a contract with Beech Street, a VIANT Network
("Beech Street") as a health care provider with the Beech Street
network.  This contract had an effective date of September 3,
2009.  The Beech Street contract included United as a payor
within its network, subject to the terms of the contract,
including the obligation to make payments to Plaintiff.  (Prop.
Sec. Am. Comp. ¶ 74.)  Under the Beech Street contract, Plaintiff
is entitled to be paid for covered services at 80% of usual

---

[1] In addition to the complaint, a court may consider
material "integral to or explicitly relied upon in the complaint"
without converting a motion to dismiss into one for summary
judgment.  In re Burlington Coat Factory Sec. Litig., 114 F.3d
1410, 1426 (3d Cir. 1997).  In this case, United has included the
Affidavit of Stacy A. Chalupsky, an employee of United, in
support of its motion to dismiss.  Ms. Chalupsky's affidavit
serves to identify which Plans are governed by ERISA and which
are not.  As this information is integral to the Plaintiff's
complaint, the court may properly consider Ms. Chalupsky's
affidavit without converting this motion to a summary judgment
motion.

5

billed charges, less applicable co-payments, deductibles and co-insurance by payors, which identified payors specifically include United.  (Prop. Sec. Am. Comp. ¶ 73.)  United as a participating payor with Beech Street, authorized Beech Street to enter into contracts on their behalf, including but not limited to, the contract with the Plaintiff.  (Prop. Sec. Am. Comp. ¶ 76.)

The Plaintiff filed the instant action in the Superior Court of New Jersey, Law Division, Camden County and subsequently filed a first amended complaint, seeking payment for the services rendered to Patients 1-50.  [Docket Item 1.]  The first amended complaint brought claims against the Defendants for: breach of contract, breach of the Beech Street contract, quantum meruit, third party beneficiary, contract by custom or dealing, reasonable reliance/arbitrary and disparate treatment, and tortious interference.

The Defendants then removed the case to this Court.  [Docket Item 2.]  The Defendants then filed the instant motion to dismiss.  [Docket Item 4.]  The Plaintiff filed opposition to the dismissal motion [Docket Item 24] and filed a motion for leave to file a second amended complaint [Docket Item 18].  The proposed second amended complaint alleges the following causes of action against the Defendants: breach of contract, breach of the Beech Street contract, unjust enrichment and quantum meruit, third party beneficiary, implied contract/contract by custom or

dealing/implied covenant of good faith and fair dealing, reasonable reliance/arbitrary and disparate treatment, and tortious interference, negligent misrepresentation, arbitrary and capricious, promissory estoppel, ERISA - payment of benefits due/violation of ERISA 502(a)(1).

## III.   PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT

### A.   Standard of Review

Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires.  Fed. R. Civ. P.  The decision to permit amendment is discretionary.  Toll Bros., Inc. v. Township of Readington, 555 F.3d 131, 144 n. 10 (3d Cir. 2009).  Among the legitimate reasons to deny a motion is that the amendment would be futile.  Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).  Futility is determined by the standard of legal sufficiency set forth in Rule 12(b)(6), Fed. R. Civ. P.  In re Burlington Coat Factory Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997).  Accordingly, an amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted.  Id.

A complaint sufficiently states a claim when it alleges facts about the conduct of each defendant giving rise to liability.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  These factual allegations must present a plausible basis

7

for relief (i.e. something more than the mere possibility of legal misconduct).  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).  In assessing the complaint, the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

The Plaintiff's Second Amended Complaint alleges ten counts. First, the Court will address the issue of ERISA preemption. Second, the Court will examine each of Plaintiff's alleged causes of action to determine if a plausible basis for relief is presented.

**A. ERISA PREEMPTION**

The Defendants argue that Counts I through X of Plaintiff's proposed second amended complaint, to the extent these counts are seeking benefits under the ERISA plans, are completely preempted by ERISA's civil enforcement provision, § 502(a).  The parties do not dispute that 13 of the 14 plans at issue are ERISA plans. The Defendants do not argue that ERISA preempts Counts I through X of Plaintiff's complaint as to the remaining non-ERISA plan.

ERISA's civil enforcement provision provides that a civil action may be brought "by a participant or beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his

rights to future benefits under the terms of the plan." 29
U.S.C. § 29 U.S.C. 1132(a)(1)(B). ERISA's civil enforcement
mechanism has "such extraordinary pre-emptive power" that all
state law causes of action that are within its scope are
completely preempted. <u>Pascack Valley Hosp. v. Local 464A UFCW
Welfare</u>, 388 F.3d 393, 399-400 (3d Cir. 2004) (quoting <u>Aetna
Health Inc. v. Davila</u>, 542 U.S. 200, 209 (2004)). In <u>Pascack</u> the
Third Circuit outlined the test, provided by the Supreme Court in
<u>Davila</u>, for determining whether a claim falls within the scope of
§ 502(a). A claim is completely preempted if (1) the plaintiff
could have brought the action under § 502(a) and (2) no other
legal duty supports the plaintiff's claim. <u>Pascack</u>, 388 F.3d at
400.

   In this case, the Plaintiff is suing in both its capacity as
the assignee of the benefits of Patients 1-50 as well as its non-
derivative capacity as a service provider. To the extent that
Plaintiff is seeking to recover benefits due under the ERISA
plans to Patients 1-50 as a beneficiary by virtue of the
assignments of benefits, Counts I through X are completely
preempted by ERISA's civil enforcement provision. The Plaintiff
could have brought this action as a civil enforcement action
under § 502(a) and no other legal duty supports the Plaintiff's
claims.

   To the extent that the Plaintiff is suing in its non-

derivative capacity as a service provider in Counts I through X, these claims are not completely preempted through ERISA's civil enforcement provision because the Plaintiff is neither a "participant" nor a "beneficiary" since it is an out of network provider, and therefore could not bring suit pursuant to § 502(a).

However, ERISA contains, in addition to its complete preemption power under § 502(a), an express preemption provision. Section 514(a) provides, with some exceptions not relevant here, that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).  The Supreme Court has given broad meaning to "relate to," stating: "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987).  The Third Circuit instructs that a state law claim relates to an employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan." 1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992) (citing Ingersoll-Rand Corp. v. McClendon, 498

10

U.S. 133, 139-40 (1990)).

Plaintiff's state law claims raised in Counts I through VII, IX and X,[2] which are asserted in Plaintiff's non-derivative capacity as a service provider, are expressly preempted by ERISA because they "relate to" an ERISA benefits plan.  Each of Plaintiff's claims in Counts I[3] through VII, IX and X are all grounded in the premise that the Defendants were required to pay Plaintiff for services the Plaintiff provided to Patients 1-50 who were covered under ERISA benefit plans.  It is clear that "the existence of an ERISA plan [is] a critical factor in establishing liability" under Counts I through VII, IX and X, and therefore, these claims are expressly preempted.

Accordingly, Counts I through VII, IX and X of Plaintiff's complaint are preempted by ERISA and will be dismissed as to the

---

[2] Counts I through VII, IX and X allege the following causes of action: Breach of Contract (Count I); Breach of Contract - Beech Street (Count II); Unjust Enrichment and Quantum Meruit (Count III); Third Party Beneficiary (Count IV); Implied Contract/Contract by Custom or Dealing/Implied Covenant of Good Faith and Fair Dealing (Count V); Reasonable Reliance/Arbitrary and Disparate Treatment (Count VI); Tortious Interference (Count VII); Arbitrary and Capricious (Count IX); and Promissory Estoppel (Count X).

[3] To the extent the Plaintiff argued that its breach of contract claim in Count I was not preempted by ERISA in Plaintiff's capacity as a service provider because of an independent provider agreement, the court finds this argument unpersuasive.  It is undisputed that the Plaintiff was an out of network provider and did not have a provider agreement with the Defendants.  Therefore, the Plaintiff's reliance on Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc., 187 F.3d 1045 (9th Cir. 1999), is without merit.

ERISA plans.

However, Plaintiff's claim for negligent misrepresentation raised in Count VIII is a closer issue.  The Plaintiff claims that in telephone conversations between Plaintiff's representatives and Defendants' representatives, the Defendants' representatives negligently misrepresented and informed Plaintiff's representatives that the facility fees and services provided to Patients 1-50 were covered services and would be reimbursed under the Plans.  (Prop. Sec. Amend. Comp. ¶ 174.) The Plaintiff argues this tort claim was committed by the Defendant and is independent of the plan.  The Defendants maintain that this claim relates to the ERISA plan and should be preempted.  In addition, the Defendants argue that this is not the type of case where a negligent misrepresentation claim is appropriate because Plaintiff's injury stems from the alleged breach of the contracts between Patients 1-50.

The court finds the reasoning articulated in McCall v. Metropolitan Life Insurance Company, 956 F. Supp. 1172 (D.N.J. 1996) persuasive and therefore, Plaintiff's negligent misrepresentation claim raised in its non-derivative capacity in Count VIII is not preempted.

McCall held that a negligent misrepresentation claim was sufficiently independent of an ERISA plan and therefore was not preempted by ERISA.  Id. at 1186.  The district court reached

12

this conclusion because it was "unable to discern from the statute the congressional intent to preclude a party," such as an out of network provider, from bringing a misrepresentation claim. Id.  Importantly, the court noted that health care providers, such as Plaintiff in this case, who are neither beneficiaries nor participants under the ERISA statute are not able to bring suit in their own name under ERISA.  Consequently, if ERISA's express preemption provision is interpreted so broadly as to preempt Plaintiff's negligent misrepresentation claim, then health care providers such as the Plaintiff, "would be stripped of the right to bring suit for tortious conduct such as that which allegedly occurred in this case, where negligent misrepresentations by private claims reviewers to health care providers induce the providers to render extended medical services and care."  Id. at 1186.

The court also cited pragmatic justifications for its holding, explaining:

> In determining whether a patient is eligible for coverage under a health care plan, health care providers customarily verify the patient's coverage with the insurer's agents. See Memorial Hosp. Sys., 904 F.2d at 246. If coverage is confirmed, the patient is generally admitted "without further ado." Id. The result sought by Met Life and Healthmarc in this case would, by rendering both ERISA remedies and state-law remedies unavailable to health care providers, effectively immunize such health care managers and plan administrators from certain fraudulent and negligent misrepresentations made to health care providers. In turn, if ERISA were interpreted as precluding claims for negligent or fraudulent misrepresentations of health benefits administrators and

managed care consultants to health care providers who
rely upon promises of coverage, critical health care
decisions would be delayed while the provider determined
for itself whether its medical services would be covered
under the specific terms of each prospective patient's
plan. In the real world, providers place reliance upon
the benefit plan interpretations of benefits
administrators and managed care consultants functioning
as intermediaries between the provider and the patient's
benefit plan. Under the interpretation of 29 U.S.C. §
1144 espoused by Met Life and Healthmarc, such health
care providers would be forced to demand payment up front
or impose other costly inconveniences before admitting a
patient for treatment. See <u>Memorial Hosp. Sys.</u>, 904 F.2d
at 247. There is nothing in the language of ERISA or
pertinent ERISA case law that compels such an inefficient
result.

<u>Id.</u> at 1186-87.

The court finds this reasoning equally applicable in the
instant action.  Therefore, the Plaintiff's proposed negligent
misrepresentation claim asserted in its own non-derivative
capacity as an out of network service provider is not preempted
by ERISA.  Whether the Plaintiff's allegations state a sufficient
claim upon which relief can be granted will be discussed below in
subsection B(10).

**B. Sufficiency of Plaintiff's Claims**

The Plaintiff's proposed second amended complaint alleges
ten state law claims as to the one non-ERISA plan.  As to the 13
ERISA plans, the Plaintiff brings a claim pursuant to ERISA's
enforcement provision, § 502(a), 29 U.S.C. § 1132(a)(1).  Each
claim will be address separately below.

**1. Breach of Contract**

To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir.2007).

The Plaintiff's complaint alleges that "there is no written policy provision or plan document that prohibits payment of Services provided at 'unlicensed' ambulatory care facilities which are wholly physician owned with single operating rooms such as Plaintiff herein." (Prop. Sec. Amend. Comp. ¶ 91.) Therefore, the Defendants' refusal to pay Plaintiff for services rendered to Patients 1-50, which were otherwise covered, was a breach of the non-ERISA provider agreement.

The Defendants argue that the Plaintiff has failed to sufficiently allege the second element of its breach of contract claim. Specifically, the Defendant argues that Plaintiff's allegation that the plan documents for Patients 1-50 did not prohibit payment of services at unlicensed ambulatory care facilities to be vague because the Plaintiff fails to state the express terms or provisions Defendants have actually breached. The Plaintiff argues, and alleges in its complaint, that the Defendants have failed to provide the Plaintiff with the specific plan document at issue despite the Plaintiff's multiple requests. Without the specific plan document, the Plaintiff argues it is

15

unable to allege the violation of an express provision because it does not know the content of the express provisions.

The court finds the Plaintiff has stated a sufficient claim for breach of contract.  It is clearly alleged that the reason the Defendants refused to pay the Plaintiff's for the services provided to Patients 1-50 was because the Plaintiff's facility was not licensed by the state of New Jersey.  The Plaintiff alleges the absence of a provision which prohibits payments for services provided at 'unlicensed' ambulatory care facilities. Therefore, the Defendants' refusal to remit payment for the services rendered, if proved, would be a breach of the plan agreement as to the non-ERISA plan.  Under the facts alleged, it is clear that Plaintiff's complaint states a cause of action for breach of contract.

Therefore, the Plaintiff will be permitted to amend its complaint alleging a claim for breach of contract as to the non-ERISA plan only.

### 2. Breach of Contract - Beech Street

The complaint next alleges that the Defendants breached the Beech Street Contract by failing to pay the Plaintiff for services provided to Patient's 1-50.  The Beech Street contract entitles the Plaintiff to be paid for covered services at 80% of usual billed charges less applicable co-payments, deductibles and co-insurance by payors.  (Prop. Sec. Amend. Comp. ¶ 103.)  The

16

Plaintiff then alleges that the Defendants authorized Beech
Street to enter into contracts on their behalf, including the
contract with the Plaintiff herein.  (Prop. Sec. Amend. Comp. ¶
104.)  The Plaintiff maintains that it has made demand for
payment of its outstanding claims under the Beech Street
contract, but the Defendants have failed to remit payments.
(Prop. Sec. Amend. Comp. ¶ 105.)

The Defendants argue that they cannot be sued for breach of
a contract to which they are not a party.  The Plaintiff
maintains that it sufficiently alleged an agency relationship
between Beech Street and the Defendants to establish a breach of
contract claim.

It is well established that a principal is bound to
contracts executed by an agent if it is within the agent's
authority to contract on behalf of that principal.  Mesce v.
Automobile Ass'n of New Jersey, 8 N.J. Super. 130, 135 (App. Div.
1950)("It is, of course, the general rule that the principal is
bound by the acts of the agent within the apparent authority
which he knowingly permits the agent to assume or which he holds
the agent out to the public as possessing.")  See Union Trust Co.
v. Wekfern Food Corp., No. 86-728, 1988 U.S. Dist. LEXIS 11858,
*12 (D.N.J. October 5, 1988) and Alicea v. New Brunswick
Theological Seminary, 244 N.J. Super. 119, 128 (App. Div. 1990).

The Plaintiff's complaint, as to the non-ERISA plan,

17

sufficiently alleges that Beech Street entered into the contract as an agent for the United.  Accordingly, if such agency is shown, United, as the principal, may be liable for breach of contract through the acts of its agent, Beech Street. Therefore, the Plaintiff will be permitted amend its complaint to include a breach of contract based upon the Beech Street contract with regard to the non-ERISA plan.

### 3. Unjust Enrichment and Quantum Meruit

Plaintiff's claims for unjust enrichment and quantum meruit allege that the Plaintiff provided services to Patients 1-50 after receiving verbal confirmation from the Defendants that these services were covered under the insurance plans and the Defendants subsequently refused to remit payment for the services.

In order to state claim under the quasi-contractual theory of quantum meruit, a plaintiff must establish four elements:  (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services.  Sean Wood, L.L.C. v. Hegarty Group, Inc., 422 N.J. Super. 500, 513 (App. Div. 2011).  "Quasi-contractual recovery on the basis of quantum meruit rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another."  Id. at 512.

In order to establish a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).

It is well established that claims of quantum meruit and unjust enrichment do not exist where a valid express contract exists concerning the same subject matter. "Quasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter." Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir. 1983).

In this case, the non-ERISA insurance plan of Patients 1-50, to which Plaintiff is the assignee of benefits, governs the instant dispute and takes precedence over any non-derivative claim Plaintiff has as a service provider.

Further, to state a claim for quantum meruit and unjust enrichment, the benefit at issue must have been conferred on United, as the Defendants. See Alpert, Golberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super 510, 544 n.6 (2009); 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457, 464 (1963).

In this case, the Plaintiff provided services to Patients 1-50 and any benefit conferred was conferred on Patients 1-50, not United.  United, as the insurance company, "derives no benefit from those services; indeed, what the insurer gets is a ripened

19

obligation to pay money to the insured - which hardly can be called a benefit." <u>Travelers Indem. Co. of Conn. v. Losco Group, Inc.</u>, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001).

Therefore, Plaintiff will not be permitted to amend its complaint to include claims for unjust enrichment and quantum meruit as such claims would be futile.

### 4. Third Party Beneficiary

This claim is set forth by the Plaintiff as an alternative to its breach of contract claim in the event the Plaintiff is not entitled to recovery as a service provider or the Assignments of Benefits are not recognized.  The Defendants argue that this claim is redundant to Plaintiff's breach of contract claim and should be dismissed.

Under the Federal Rules of Civil Procedure, a plaintiff may plead alternative claims for relief, regardless of consistency. Fed. R. Civ. P. 8(d)(3)("A party may state as many separate claims or defenses as it has, regardless of consistency").

The Plaintiff alleges sufficient factual allegations to support its claim as a third party beneficiary.  Therefore, as to the non-ERISA plan, the Plaintiff will be permitted to amend its complaint to include a claim as a third party beneficiary.

### 5. Promissory Estoppel

This claim for promissory estoppel is also asserted by the Plaintiff in the alternative to its breach of contract claim to

20

the extent that the Plaintiff may not be recognized as the assignee and/or the contract claims are not cognizable.  The Defendants argue that this claim should be dismissed because the representations made by Defendants' representatives to the Plaintiff did not constitute independent promises to pay separate and apart from the breach of contract claims.  Rather, the Defendants' representatives made representations which only pertained to coverage under the insurance contracts.

In order to allege a claim for promissory estoppel, a plaintiff must show four elements:  (1) a clear and definite promise; (2) made with the expectation that the promisee would rely upon it; (3) reasonable reliance; and (4) definite and substantial detriment.  <u>Toll Bros., Inc. v. Board of Chosen Freeholders of County of Burlington</u>, 194 N.J. 223, 253 (2008).

In this case, the proposed second amended complaint sets forth in detail the alleged conversations between the Plaintiff's representatives and the Defendants' representatives regarding payment for services provided by the Plaintiff to Patients 1-50. During these conversations, the Plaintiff's representative provided the Defendants' representative with detailed information about the patient, the Plaintiff, and the services to be rendered, including: the tax i.d. number of the Plaintiff, identification of the patient by name, date of birth and policy number, as well as the specific procedure being performed.  In

each telephone call, Plaintiff's representative was informed by the Defendants' representative that there was coverage for Plaintiff's facility fees and for the procedures involved. (Prop. Sec. Am. Comp. ¶¶ 15-26.)

These conversations alleged in the complaint constituted clear and definite promises upon which the Plaintiff relied in rendering services to Patients 1-50.  The facts alleged here, that Defendants' representatives confirmed that Plaintiff would receive reimbursement for services provided to Patients 1-50, are separate from the Plaintiff's breach of contract claim which is premised on the improper denial of payment based on state licensure.  While the Plaintiff has alleged a breach of contract claim, that should not foreclose the Plaintiff from alleging promissory estoppel in the alternative.  As discussed above, a plaintiff may plead alternative claims for relief, regardless of consistency.  Fed. R. Civ. P. 8(d)(3)("A party may state as many separate claims or defenses as it has, regardless of consistency").

Therefore, the Plaintiff will be permitted to amend its complaint to include a claim for promissory estoppel as to the non-ERISA plan.

### 6. Implied Contract/Contract by Custom or Dealing/Implied Covenant of Good Faith and Fair Dealing

The Plaintiff alleges that from Spring 2009 to September 2009, the Defendants paid Plaintiff for services provided to its

patients who were Defendants' insureds and beneficiaries pursuant to the Assignments of Benefits ("AOBs") signed by the patients, or alternately by reason of an obligation to make payment to Plaintiff as a medical provider, or alternately pursuant to the applicable insurance agreements and/or the Beech Street agreement.  (Prop. Sec. Am. Comp. ¶ 136.)  The Plaintiff alleges that this course of conduct constituted an implied promise to continue payment to Plaintiff for services provided to Defendants' insureds.  (Prop. Sec. Am. Comp. ¶ 137.)

The Defendants argue that Plaintiff's claim for "Implied Contract/Contract by Custom or Dealing/Implied Covenant of Good Faith and Fair Dealing" should be dismissed because the Plaintiff does not set forth any facts that would allow the Court or the Defendants to discern the alleged terms of the Defendants' promise and/or contract to pay.  The Defendants maintain that the complaint does not identify a specific oral representation which supports an implied contract.

The Plaintiff has not opposed the dismissal of this claim. The court agrees that the Plaintiff's allegations are insufficient to allow the court to discern the alleged terms of the Defendants' alleged implied contract.  Therefore, the court will deny Plaintiff leave to amend its complaint to allege a count for "Implied Contract/Contract by Custom or Dealing/Implied Covenant of Good Faith and Fair Dealing."

23

### 7. Reasonable Reliance/Arbitrary and Disparate Treatment

The Defendants argue that "Reasonable Reliance/Arbitrary and Disparate Treatment" is not a recognized cause of a action under either state or federal law.  The Plaintiff has not opposed Defendants' motion as to this claim.

As the Plaintiff has not put forth any legal basis for its "Reasonable Reliance/Arbitrary and Disparate Treatment" claim, the Plaintiff will not be permitted to file an amended complaint alleging this count as such claim would be futile.

### 8. Arbitrary and Capricious

Similarly, the Defendants argue that "Arbitrary and Capricious" is a standard of review, not an independent cause of action.  The Plaintiff has not opposed Defendants' motion to dismiss this claim.

As the Plaintiff has not put forth any legal basis for its "Arbitrary and Capricious" claim, and as arbitrary and capricious is clearly a standard of review and not an independent cause of action, Plaintiff will not be permitted to file an amended complaint alleging this count as such claim would be futile.

### 9. Tortious Interference

The Plaintiff alleges in its proposed second amended complaint that the Defendants interfered with Plaintiff's contractual, business and patient relations by intentionally and maliciously refusing to pay for services rendered by the

24

Plaintiff to Patients 1-50.  (Prop. Sec. Am. Comp. ¶¶ 165-171.)

Under New Jersey law, a complaint based on tortious interference with prospective economic advantage must allege three elements: (1) a protectable right - a prospective economic or contractual relationship; (2) the interference was done intentionally and with malice; (3) the interference caused the loss of the prospective gain; and (4) the injury caused damage. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (1989).

Importantly, "it is fundamental to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." Id. at 752.  A cause of action for tortious interference "was not meant to upset the rules governing the contractual relationship itself." Id. at 753.  "Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law." Id.

The Defendants argue that they are a party to the insurance contracts at issue and therefore, a claim for tortious interference with prospective economic advantage is inappropriate and contract laws govern the instant dispute.  The Plaintiff does not oppose the Defendants' motion to dismiss as to this claim.

The court finds the Defendants' argument persuasive.  The

25

Defendants are a party to the insurance contracts at issue in this case, and therefore, a claim for tortious interference is inappropriate.  Therefore, the Plaintiff will not be permitted to amend its complaint to include a cause of action for tortious interference with prospective economic advantage.

### 10. Negligent Misrepresentation

As discussed above, the Plaintiff's proposed second amended complaint alleges a claim of negligent misrepresentation, which this court concluded <u>infra</u> was not preempted by ERISA.  The Plaintiffs allege that in telephone conversations between Plaintiff's representatives and Defendants' representatives, the Defendants' representatives negligently misrepresented and informed Plaintiff's representatives that the facility fees and services provided to Patients 1-50 were covered services and would be reimbursed under the Plans.  (Prop. Sec. Amend. Comp. ¶ 174.)

In order to state a claim for negligent misrepresentation, a plaintiff must allege "an incorrect statement, negligently made and justifiably relied on, which results in economic loss." <u>Konover Const. Corp. v. East Coast Const. Services Corp.</u>, 420 F. Supp. 2d, 366, 370 (D.N.J. 2006).  While a fiduciary duty between the parties is not an element of a claim for negligent misrepresentation, courts have held that "a plaintiff seeking to recover for negligent misrepresentation must plead that the

26

defendant owed it a duty of care."  Roll v. Singh, No. 07-04136, 2008 W.L. 3413863, *20 (D.N.J. June 26, 2008).

The Defendants argue that Plaintiff fails to state a claim because it did not allege the Defendants owed it a duty of care. However, the existence of a duty is a question of law to be decided by the court, not an issue of fact.  Endre v. Arnold, 300 N.J. Super. 136, 142 (App. Div. 1997)("Whether a duty exists is solely a question of law to be decided by a court and not by submission to a jury.")  Therefore, the Plaintiff need not expressly plead that the Defendants owed it a duty of care. Rather, in order to survive a motion to dismiss, the Plaintiff need only allege sufficient facts for a court to find a basis for the imposition of a duty between the parties.

New Jersey law sets forth several factors for a court to consider in determining whether a duty exists.

> determination of the existence of a duty ultimately is a question fairness and policy. An important, although not dispositive consideration, is the foreseeability of injury to others from the defendant's conduct.  Also important are the nature of the risk posed by the defendant's conduct, the relationship of the parties, and the impact on the public of the imposition of a duty of care.

Snyder v. American Ass'n of Blood Banks, 144 N.J. 269, 292 (1996)(citations omitted).

In this case, the court finds that the Plaintiff has sufficiently alleged facts to support a finding that the Defendants owed the Plaintiff a duty of care.   The Plaintiff has

27

alleged that it is a provider of medical services and relied on representations of the Defendants, an insurer providing insurance coverage to insureds and beneficiaries within New Jersey, in ultimately providing medical services to Patients 1-50.  The court finds the reasoning in McCall, 956 F. Supp. at 1187, persuasive and applicable to the instant action.  Specifically:

> If health benefits administrators and managed care consultants fail to act reasonably in making representations concerning insurance coverage, financial harm will likely be inflicted on the medical companies that provide treatment in reliance upon promises of payment. This threatened harm, moreover, can easily be avoided if companies . . . ensure the accuracy of their representations or refrain from making assurances of coverage in instances in which they do not have the authority to do so. As discussed previously, health care providers are often compelled by circumstances to rely on the representations made by benefits administrators and managed care consultants. Thus, the general public and companies involved in the delivery of medical care have a vital interest in ensuring that health plan administrators and medical consultants exercise due care in making such representations concerning insurance coverage. See Snyder, 144 N.J. at 292, 676 A.2d 1036 (imposing on blood "clearing house" duty to exercise due care, because of reliance of hospitals and patients on defendant for safety of nation's blood supply).

In this case, the United owed a duty to provide the Plaintiff with accurate information regarding reimbursement for medical services provided to United insureds.  It was foreseeable that incorrect information would cause the Plaintiff and/or Patients 1-50 economic harm, as the cost of the medical services would not be covered by the insurance plan.  Moreover, it is common for medical providers to verify coverage with a patient's

insurance prior to administering any care in order to prevent the possibility of financial harm to the patient and the service provider.  The general public has a significant interest in ensuring that representations made to medical service providers by insurance company representatives are accurate in order avoid incurring unnecessary expense and to provide efficient care.  The Court does not have occasion to consider whether an insurance carrier may disclaim the healthcare provider's ability to rely upon such oral advice of coverage, since that circumstance is not presented in the pleadings under review.

Therefore, the Plaintiff will be permitted to amend its complaint to include a claim for negligent misrepresentation as to the ERISA and non-ERISA plans.

### 11.  ERISA enforcement

Finally, the Plaintiff alleges a claim pursuant to ERISA's civil enforcement provision, § 502(a), 29 U.S.C. § 1132(a)(1)(B), as to the 13 ERISA plans.  As discussed above, ERISA provides a private cause of action for a participant or beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 29 U.S.C. 1132(a).

The Defendant argues that the Plaintiff has failed to state a claim under ERISA because the Plaintiff has not identified any

29

specific provision of the 13 ERISA plans that United has allegedly breached.  The Plaintiff argues that it provided specific language from the Summary Plan Descriptions("SPDs") for 4 of the 13 ERISA plans at issue.  As to the other plans, the Plaintiff argues, and alleges in its complaint, that the Defendants have failed to provide the plan documents to the Plaintiff despite numerous requests.

"A plaintiff seeking to recover under section 502(a)(1)(B) must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan" and that the plan administrator improperly denied him or her those benefits.  Hooven v. Exxon Mobil Corp., 465 F.3d 566, 574 (3d Cir. 2006).  "ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits."  In re Unisys Corp. Retiree Medical Ben. ERISA Litigation, 58 F.3d 896, 902 (3d Cir. 1995).

The Plaintiff alleges in its complaint that it provided pain management injections to nine patients.  (Prop. Sec. Am. Comp. ¶¶ 16-24.)  Prior to providing these injections, the Plaintiff's representative confirmed coverage for the service and facility fees with Defendants' representatives.  (Prop. Sec. Am. Comp. ¶¶

16-24.)  The Plaintiff cites to four SPDs of the thirteen ERISA

plans at issue to support its claim.  (Prop. Sec. Am. Comp. ¶¶

51-63.)  Specifically, the Plaintiff alleges:

> 52. For example, the Ernst & Young Flexible Benefits
> Program SPD provides that "once the deductible is
> satisfied, the plan pays a percentage (based on your
> benefit election) of eligible expenses... You have the
> freedom to choose any physician or hospital." Under the
> Open Access Plan Summary, outpatient treatment is
> specifically covered and includes "outpatient hospital".
> Under the "$2,500.00 Deductible Plan Summary" outpatient
> treatment specifically includes both "outpatient surgery
> - hospital" and "outpatient surgery."
>
> 53. The SPD for Administaff of Texas, Inc. similarly
> provides for benefits for outpatient surgery both in and
> out of network. Eligible expenses specifically include
> non-network benefits. The SPD states "Pay for Covered
> Health Services Provided by Non-Network Providers: In
> accordance with any state prompt pay requirements, we
> will pay Benefits after we receive your request for
> payment that includes all required information ... "
>
> 54. The Administaff SPD specifically provides for
> coverage for surgery - outpatient which includes "surgery
> and related services received on an outpatient basis at
> a hospital or alternate facility or in a physician's
> office" providing benefits which include "the facility
> charge and the charge for supplies and equipment."
> Further, "alternate facility" is defined as "a health
> care facility that is not a hospital and that provides
> one or more of the following services on an out-patient
> basis, as permitted by law: surgical services ... "
>
> 55. Under the Interpublic Group of Companies, Inc. SPD,
> outpatient surgery is specifically covered when "received
> on an outpatient basis at a hospital or alternate
> facility."
>
> 56. Under the Bridgestone Americas Holding, Inc. SPD, in-
> network and out-of-network benefits are available for
> "surgical outpatient Hospital or Treatment Facility." In
> fact, covered expenses include "Outpatient Surgery," and
> the SPD states: "The Plan also requires that specific
> surgeries be performed on an outpatient basis in order

31

for the Plan's normal benefits to apply."

57. The Bridgestone SPD also specifically provides that,
"If there is any conflict between the brief description
presented here and the official Plan document, the Plan
document will govern."

58. None of the SPDs provided by United have language
indicating that claims cannot or may not be paid because
a facility does not have state licensure.

59. Defendants' insurance agreements and plans applicable
to the claims they denied for payment to Plaintiff, do
not in writing prohibit payment to otherwise lawfully
authorized unlicensed ambulatory care facilities
including Plaintiff's facility. It is believed that
Defendants' denials are in violation of the terms of the
insuring agreements at issue.

60. With the exception of the Administaff SPD, the SPDs
do not define "alternate facility" and do not limit
payment to outpatient surgical facilities that are
licensed by the state. The Administaff SPD definition
specifically included a facility such as Plaintiff, which
performs surgical services on an outpatient basis.

61. Plaintiff meets any reasonable interpretation of
"alternate facility" under the SPDs, as it is an
ambulatory surgical facility and pursuant to State of New
Jersey, Department of Health Regulations, 8 N.J.A.C. 43A,
is not required by the State of New Jersey to be
"licensed."
(Prop. Sec. Am. Comp. ¶¶ 52-61.)

However, these allegations do not establish, or even

address, whether pain injections are a covered benefit under the

plan or how pain injections relate to outpatient surgery.  In

addition, these allegations generally cite to the SPD and do not

provide the court with enough factual information to determine

whether the pain injections were indeed covered services under

the plan.  Further, while the Plaintiff alleges that none of the

SPDs provided by Defendants have language indicating that claims cannot or may not be paid because a facility does not have state licensure, the Plaintiff has not attached these SPDs for the court's review.

As to the remaining nine ERISA plans, the Plaintiff provides no support in its complaint for these claims because the Plaintiff does not provide any facts supporting its allegations that benefits are due and owing under the plans.  Without information as to the terms and provisions of the plan documents, the complaint fails to state a claim upon which relief can be granted.

To the extent that the Defendants failed to provide the Plaintiff with the requested documents, ERISA provides that plan administrators shall "upon written request of any participant or beneficiary furnish a copy of the latest updated summary, plan description."  29 U.S.C. § 1024(b)(4).  A beneficiary may enforce this obligation under ERISA's civil enforcement provision, 29 U.S.C. § 1132(c).

The Plaintiff has not followed the procedure prescribed by ERISA to obtain copies of the plan.  It is the Plaintiff's burden of proof to have the plan documents and cite to specific plan provisions when filing a civil complaint to obtain ERISA benefits.  As the Plaintiff has not cited to or attached the plan documents for the remaining nine ERISA plans, the Plaintiff has

33

failed to state a claim under ERISA's civil enforcement provision.

Therefore, the Plaintiff will not be permitted to amend its complaint to bring a cause of action under ERISA's civil enforcement provision at this time, as such claim is incomplete as alleged. However, the court will grant the Plaintiff leave to file a motion to amend within sixty (60) days of the date of this order to correct the above deficiencies or in the alternative, to allege a claim enforcing United's obligation to provide the plan documents pursuant to 29 U.S.C. § 1024(b)(4).

**C. Motion to Dismiss**

As the court has granted in part and denied in part Plaintiff's motion to amend the complaint, the Defendants' motion to dismiss will be dismissed as moot.

**IV.   CONCLUSION**

For the reasons discussed above, the court will grant in part and deny in part Plaintiff's motion to file a second amended complaint. The Plaintiff will be granted leave file a second amended complaint alleging the following causes of action as to the non-ERISA plan: Breach of Contract; Breach of Contract - Beech Street; Third Party Beneficiary; and Promissory Estoppel. The Plaintiff will also be granted leave to amend the complaint to allege a negligent misrepresentation claim against both ERISA and non-ERISA plans.

The court will deny Plaintiff leave to amend its complaint as to the Unjust Enrichment/Quantum Meruit claim, the Implied Contract/Contract by Custom or Dealing/Implied Covenant of Good Faith and Fair Dealing claim, the Reasonable Reliance claim, the Arbitrary and Capricious claim, and the Tortious Interference claim (as such claims are futile) and the ERISA enforcement claim (which is insufficiently pled at present).  However, the Plaintiff will be granted leave to file a subsequent motion to amend to correct the deficiencies of the ERISA civil enforcement claim or to allege a claim enforcing United's obligation to provide the plan documents pursuant to 29 U.S.C. § 1024(b)(4) within sixty (60) days of the date of this order.

Since the court has granted in part and denied in part Plaintiff's motion to file a second amended complaint, the court will dismiss Defendant's motion to dismiss as moot.

The accompanying Order will be entered.


**March 6, 2012**                          **s/ Jerome B. Simandle**
Date                              JEROME B. SIMANDLE
                                  Chief U.S. District Judge

35